IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**FEDERAL ENERGY REGULATORY**
**COMMISSION,**

  **Plaintiff,**

  v.                                                    **Civil Action No. 3:15cv452**

**POWHATAN ENERGY FUND, LLC,** *et al.,*

  **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Federal Energy Regulatory

Commission's ("FERC" or the "Commission") Motion for Default Judgment against Defendant

Powhatan Energy Fund, LLC ("Powhatan"). (ECF No. 321.)  For the reasons that follow, the

Court GRANTS the Motion for Default Judgment. (ECF No. 321.)

## I.  Background[1]

Powhatan, a private investment fund, conducted financial trades through the wholesale

electricity market administered by PJM Interconnection, LLC ("PJM"), an organization that

operates various electricity markets throughout the Mid-Atlantic.  Certain energy trades on the

wholesale market qualified market participants to receive a payment, known as a "Marginal Loss

Surplus Allocation," or MLSA, which PJM distributed to customers making certain trades. (ECF

---

[1] The Court only summarizes the background germane to the instant motion.  FERC
originally brought this case against Houlian Chen, HEEP Fund, Inc., and CU Fund, Inc
(collectively, the "Chen Defendants"), as well as Powhatan.  On November 3, 2021, FERC and
the Chen Defendants filed a Joint Stipulation of Dismissal with Prejudice, requesting that the
Court issue an order of dismissal with prejudice, (ECF No. 247.) which the Court granted, (ECF
No. 249).  The stipulation in no way affected, altered, or resolved FERC's claim against
Powhatan.  (ECF No. 247, at 1.)

No. 93-1 ¶ 2.)  FERC alleges here that, for approximately two months, between June 1, 2010 and August 3, 2010, Powhatan engaged in a "trading scheme to receive excessive amounts of MLSA payments," by manipulating "day-ahead" and "real-time" energy trades to engage in what are commonly called "wash trades": "trades that are pre-arranged to cancel each other out and involve no economic risk." (ECF No. 93-1 ¶¶ 3, 6.)  These types of transactions are commonly called "wash trades."  Powhatan engaged in these transactions because it learned that in certain situations PJM paid out credits that at times exceeded the transaction fees charged by PJM. (ECF No. 93 ¶ 52.)  Between June 1, 2010, and August 3, 2010, Powhatan made $3,465,108 from transactions that Powhatan's trader described as "risk-free."  (ECF No. 93 ¶¶ 11, 57.)

FERC became aware of Powhatan's purportedly manipulative activities after PJM received two complaints from market participants about someone "trying to game the system." (ECF No. 93-1 ¶ 26.)  In August 2010, in response to these complaints, PJM submitted a "referral" to the Commission's Office of Enforcement, alerting the Commission to Powhatan's allegedly fraudulent behavior and setting off the investigations that ultimately resulted in this action.  (ECF No. 93-1 ¶ 26.)  That same month, FERC's Office of Enforcement began investigating Powhatan for engaging in allegedly manipulative and fraudulent energy trading. (ECF No. 93 ¶ 67; ECF No. 93-1 ¶ 28.)

On May 29, 2015, after a contested and adversarial proceeding before FERC, the Office of Enforcement issued an eighty-nine-page Order Assessing Civil Penalties (the "Penalty Order").  (ECF No. 93-1.)  In the Penalty Order, the Commission found that Powhatan had

violated 6 U.S.C. § 824v(a)[2] and 18 C.F.R. § lc.2(a)[3] "which prohibit energy market manipulation, through a scheme to engage in fraudulent Up-To Congestion (["]UTC["]) transactions in [PJM's] energy markets to garner excessive amounts of certain credit payments to transmission customers." (ECF No. 93-1 ¶ 1.) The Commission also determined that Powhatan "engaged in round-trip UTC transactions[,] not for hedging or arbitraging price spreads[,] but instead to receive large shares of MLSA payments that otherwise would have been allocated to other market participants." (ECF No. 93-1 ¶ 69.) The Commission ruled that Powhatan's "round-trip UTC trades [were] wash trades, and therefore *per se* fraudulent and manipulative." (ECF No. 93-1 ¶ 103.) Citing the Commission's Market Behavior Rules, the Penalty Order stated that wash trades possess "two key elements[.] . . . [T]he transactions: (1) are pre-arranged to cancel each other out; and (2) involve no economic risk." (ECF No. 93-1 ¶ 103.)

Because of its findings, and pursuant to 16 U.S.C. § 823b(c),[4] FERC assessed against Powhatan a civil penalty of $16,800,000 and profit disgorgement payments of $3,465,108. (ECF No. 93-1 ¶¶ 174, 190.)

---

[2] Section 824v(a) of Title 16 of the United States Code, as relevant, prohibits the direct or indirect use of manipulative or deceptive devices "in connection with the purchase or sale of electric energy or the purchase or sale of transmission services subject to the jurisdiction of the Commission." 16 U.S.C. § 824v(a).

[3] Section lc.2(a) of Title 18 of the Code of Federal Regulations prohibits entities, in connection with the purchase or sale of energy or transmission services subject to the Commission's jurisdiction, from: (1) "us[ing] or employ[ing] any device, scheme, or artifice to defraud;" (2) making untrue or misleading statements of material fact, or omitting facts in a way that is untrue or misleading; and, (3) engaging "in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any entity." 18 C.F.R. § 1c.2(a).

[4] Section 823b(c) of Title 16 of the United States Code states, in pertinent part:

Any licensee, permittee, or exemptee who violates or fails or refuses to comply with any rule or regulation under this subchapter, any term, or condition of a license, permit, or exemption under this subchapter, or any order issued under

3

After Powhatan failed to pay the penalties within 60 days, pursuant to § 823b(d)(3)(B),[5] FERC filed the present action on July 31, 2013. (ECF No. 1.) Pursuant to the Court's order, (ECF No. 92), FERC filed an Amended Complaint, (ECF No. 93). The Amended Complaint seeks the Court's affirmance and enforcement of civil penalties assessed in FERC's Penalty Order. (ECF No. 93.)

Thereafter, the Parties engaged in years of discovery and motions practice, and an interlocutory appeal, during which Powhatan actively defended this action. Following the close of expert discovery, Powhatan filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Delaware, Case No. 22-10142-MFW. (ECF No. 302.) Accordingly, on February 22, 2022, the Court stayed the case. (ECF No. 303.)

After the closure of the claims period in the Bankruptcy Proceeding, FERC and Powhatan's Trustee reached an agreement whereby the Trustee would not oppose the stay being lifted and would not oppose or otherwise challenge the entry of a default judgment based on Powhatan's failure to defend the litigation, while FERC would not make any attempt to enforce or otherwise collect any judgment the Court may issue outside of its claim in the Bankruptcy Court. (ECF No. 316-3.) FERC and the Trustee entered a Stipulation to this effect, (ECF

---

> subsection (a) [of this section] shall be subject to a civil penalty in an amount not to exceed $10,000 for each day that such violation or failure or refusal continues. Such penalty shall be assessed by the Commission after notice and opportunity for public hearing.

16 U.S.C. § 823b(c).

[5] Section 823b(d)(3)(B) of Title 16 of the United States Code provides, in pertinent part, that: "If the civil penalty has not been paid within 60 calendar days after the assessment order has been made under subparagraph (A), the Commission shall institute an action in the appropriate district court of the United States for an order affirming the assessment of the civil penalty." 16 U.S.C. § 823b(d)(3)(B).

No. 316-3), which was accepted by the Bankruptcy Court on February 14, 2023. (ECF No. 316-4.)

Consistent with the terms of the Stipulation, FERC moved the Court to lift the stay. (ECF No. 316.) On March 6, 2023, the Court lifted the stay. (ECF No. 318.) FERC subsequently requested an entry of default from the Clerk of the Court, (ECF No. 319), and on March 7, 2023, the Clerk entered a default, (ECF No. 320). This request for default judgment ensued.

## II. Standard of Review

Federal Rule of Civil Procedure 55 governs default judgment. Rule 55(a) provides that "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The party seeking entry of default judgment must then "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

A defendant in default "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established. A default judgment is unassailable on the merits but only so far as it is supported by *well-pleaded* allegations, assumed to be true." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (internal citations omitted). The clerk's entry of default does not itself warrant the Court's entry of default judgment. *See id.* "There must be a sufficient basis in the pleadings for the judgment entered." *Id.* Therefore, before entry of default judgment, the Court must determine whether the allegations of the complaint support the relief sought. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). This is so because "[d]efault is a harsh measure because it ignores the merits," *Bogopa Serv. Corp. v.*

*Shulga*, No. 3:08cv365, 2009 WL 1628881, at *3 (W.D.N.C. June 10, 2009), and "the Fourth

Circuit has a 'strong policy that cases be decided on the merits.'" *State Employees' Credit Union*

*v. Nat'l Auto Leasing, Inc.*, No. 2:06cv663, 2007 WL 1459301, at *1 (E.D.Va. May 14, 2007).

In determining whether allegations are plausible, the reviewing court may draw on context,

judicial experience, and common sense. *See Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir.

2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

      If the facts alleged in the complaint establish liability, then the court must determine the

appropriate amount of damages. *Ryan*, 253 F.3d at 780–81. The court may make a determination

as to the amount of damages without a hearing if the record contains sufficient evidence to

support the award. *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155

F.3d 500, 507 (4th Cir. 1998) (noting that "in some circumstances a district court entering a

default judgment may award damages ascertainable from the pleadings without holding a

hearing").

## III.  Analysis

      FERC alleges Powhatan violated the statute and regulation forbidding the use of

manipulative behaviors in connection with the purchase or sale of electric energy: 16 U.S.C.

§ 824v(a) and 18 C.F.R. § 1c.2, respectively. The well-pleaded allegations in FERC's Amended

Complaint and Penalty Order, deemed admitted as a result of Powhatan's default, meet the

requirements for market manipulation

### A.  Legal Standard: Market Manipulation Claim (16 U.S.C. § 824v(a) and 18 C.F.R. § 1c.2)

Section § 824v(a) of Title 16 of the United States Code provides that:

It shall be unlawful for any entity . . . directly or indirectly, to use or employ, in
connection with the purchase or sale of electric energy or the purchase or sale of
transmission services subject to the jurisdiction of the Commission [i.e., FERC],

any manipulative or deceptive device or contrivance (as those terms are used in [Section 10(b) of the Securities Exchange Act of 1934]), in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of electric ratepayers.

16 U.S.C. § 824v(a). On the basis of this statutory authority, FERC promulgated the

Anti-Manipulation Rule. *Prohibition of Energy Market Manipulation*, Order No. 670, 114

FERC ¶ 61,047, 71 Fed. Reg. 4244-03 (2006) (codified at 18 C.F.R. § 1c.2). The relevant

portion of the Anti-Manipulation Rule states:

> It shall be unlawful for any entity, directly or indirectly, in connection with the purchase or sale of electric energy or the purchase or sale of transmission services subject to the jurisdiction of the Commission,
>
> > (1) To use or employ any device, scheme, or artifice to defraud,
> >
> > (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> >
> > (3) To engage in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any entity.

18 C.F.R. § 1c.2(a).[6] "The Rule adopts a broad definition of 'fraud' to mean 'any action,

transaction, or conspiracy for the purpose of impairing, obstructing or defeating a well-

---

[6] "FERC relied heavily on the [Securities and Exchange Commission ("]SEC["])] Rules, and in fact, the Anti-Manipulation Rule is identical to SEC Rule 10b-5." *FERC v. Coaltrain Energy, L.P.*, 501 F. Supp. 3d 503, 530 n. 15 (S.D. Ohio 2020). "The Supreme Court of the United States recently elaborated on the definitions used here, in the context of a SEC Section 10b-5 violation[.] *Id.* In *Lorenzo v. SEC*, the Supreme Court explained that,

> A " 'device,' " we have observed, is simply " '[t]hat which is devised, or formed by design' "; a " 'scheme' " is a " 'project,' " " " 'plan[,] or program of something to be done' "; and an " 'artifice' " is " 'an artful stratagem or trick.' " [*Aaron v. Securities and Exchange Commission*, 446 U.S. 680] at 696, n. 13, 686, . . . (quoting Webster's International Dictionary 713, 2234, 157 (2d ed. 1934) (Webster's Second)). . . . The words "act" and "practice" in subsection (c) are similarly expansive. Webster's Second 25 (defining "act" as "a doing" or a "thing done"); *id.*, at 1937 (defining "practice" as an "action" or "deed"); see Rule 10b-

7

functioning market.'" *FERC v. Coaltrain Energy, L.P.*, 501 F. Supp. 3d 503, 530 (S.D. Ohio 2020) (quoting *Prohibition of Energy Market Manipulation*, Order No. 670, 114 FERC ¶ 61,047, at P 50, 71 Fed. Reg. 4244-03 (2006) (codified at 18 C.F.R. § 1c.2)). Fraud, under the Rule, "is a question of fact that is to be determined by all the circumstances of a case." *Prohibition of Energy Market Manipulation*, Order No. 670, 114 FERC ¶ 61,047, at P 50, 71 Fed. Reg. 4244-03 (2006) (codified at 18 C.F.R. § 1c.2). Furthermore, the "violation of the [] Rule requires a showing of scienter." *Id.* at 52.

The elements of a market manipulation claim under § 1c.2(a)(1) are as follows:

1. Use of a fraudulent device, scheme, or artifice (further defining "fraud" as "any action, transaction, or conspiracy for the purpose of impairing, obstructing or defeating a well-functioning market")

2. With the requisite scienter

3. In connection with the purchase or sale of electric energy within FERC's jurisdiction

*Coaltrain Energy*, 501 F. Supp. 3d at 531 (citing *Prohibition of Energy Market Manipulation*, Order No. 670, 114 FERC ¶ 61,047, at P 49–53, 71 Fed. Reg. 4244-03 (2006) (codified at 18 C.F.R. § 1c.2)).

---

5(c) (making it unlawful to "engage in a[n] act, practice, or course of business" that "operates ... as a fraud or deceit").

139 S. Ct. 1094, 1101 (2019).

**B.**    **FERCs Allegations, Deemed Admitted, Establish That Powhatan Committed Market Manipulation Because FERC More Than Plausibly Alleges that Powhatan Committed (1) Fraud, with the (2) Requisite Scienter, (3) in Connection with the Purchase or Sale of Electric Energy Within FERC's Jurisdiction**

The well-pleaded allegations, deemed admitted as a result of Powhatan's default, meet the requirements for market manipulation because FERC shows Powhatan committed (1) fraud, with the (2) requisite scienter, (3) in connection with the purchase or sale of electric energy within FERC's jurisdiction. *Coaltrain Energy*, 501 F. Supp. 3d at 531; *see Prohibition of Energy Market Manipulation*, Order No. 670, 114 FERC ¶ 61,047, at P 49–53, 71 Fed. Reg. 4244-03 (2006) (codified at 18 C.F.R. § 1c.2).

First, FERC plausibly alleges that Powhatan used or employed a device, scheme, or artifice to defraud. FERC alleges here that, for approximately two months, between June 1, 2010 and August 3, 2010, Powhatan engaged in a "trading scheme to receive excessive amounts of MLSA payments," by manipulating "day-ahead" and "real-time" energy trades to engage in so-called wash trades: "trades that are pre-arranged to cancel each other out and involve no economic risk." (ECF No. 93-1 ¶¶ 3, 6.) Powhatan engaged in these transactions because it learned that in certain situations PJM paid out credits that at times outweighed the transaction fees charged by PJM. (ECF No. 93-1 ¶ 52.) During this time period, Powhatan made $3,465,108 from transactions that Powhatan's trader described as "risk-free." (ECF No. 93 ¶¶ 11, 57.)

This wash trading scheme acted as fraud or deceit upon PJM and PJM market participants because it presented as legitimate trading and masked the fact that Powhatan was using significant amounts of PJM's finite transmission in an attempt to illicitly collect credits. As the *City Power* court described, in regard to a scheme nearly identical to Powhatan's in all material

ways, that "FERC has plausibly alleged that UTC trading was allowed in the PJM market for the purpose of arbitrage, and that while City Power's transactions had the superficial appearance of arbitrage trades, they were in fact specifically designed not to serve that purpose, and instead to do nothing but rake in [credits]." *FERC v. City Power Mktg., LLC*, 199 F. Supp. 3d 218, 233 (D.D.C. 2016); *see also Coaltrain Energy*, 501 F. Supp. 3d at 543. Accordingly, the Court finds that FERC alleges facts sufficient and ample to establish that Powhatan used or employed a device, scheme, or artifice to defraud.

Second, FERC plausibly alleges that Powhatan acted with scienter. Scienter under the FERC Anti-Manipulation Rule requires reckless, knowing, or intentional actions taken in conjunction with a fraudulent scheme, material misrepresentation, or material omission. *See Prohibition of Energy Market Manipulation*, Order No. 670, 114 FERC ¶ 61,047, at P 52–53, 71 Fed. Reg. 4244-03 (2006) (codified at 18 C.F.R. § 1c.2). FERC contends that Powhatan was at all times aware that its trader was taking steps to create trades that would result in a financial nullity.

In the Amended Complaint, FERC alleges that Powhatan "knew of [the] round-trip trading scheme; understood the implications of that scheme; knowingly supported the implementation of that scheme; and deliberately sought to maximize the profits it derived from that scheme." (ECF No. 93 ¶ 93 (citing 93-1 ¶ 137).) FERC further alleges that, "[t]he Commission found that [Powhatan's] 'communications and testimony show that [it] understood that the[] round-trip UTC trades had little price risk by design, were not undertaken to arbitrage price spreads, were certain themselves to lose money, and were placed only to create the illusion of volume trading to obtain transmission and thereby earn MLSA payments that otherwise would have gone to other market participants.'" (ECF No. 93 ¶ 94 (citing 93-1 ¶ 72).)

10

Furthermore, FERC alleges that "knowing and understanding that [Powhatan's trader] was executing round-trip trades to profit solely from MLSA payments, Powhatan supported and encouraged the scheme to move forward." (ECF No. 93-1 ¶ 139.) This is "reflected in [Powhatan's] decision in Spring 2010 to increase the multiple of UTC trades executed on its behalf from four to twenty." (ECF No. 93-1 ¶ 140.) The "willingness to increase its exposure by a multiple of five shows that Powhatan knew that [its trader's] improved UTC trading scheme would allow it to secure profits without taking any of the risks inherent in ordinary spread trading." (ECF No. 93-1 ¶ 140.) Therefore, the Court finds that FERC alleges facts sufficient and ample to establish that Powhatan acted with scienter.

Finally, the Court concludes the Powhatan's wash trades were subject to FERC's jurisdiction. The trades took place in a market directly regulated by FERC and that operates subject to a FERC-approved tariff. (ECF No. 93-1 ¶¶ 144–148.) "Thus, by virtue of engaging in UTC transactions and benefiting from MLSA allocation, both of which operated under a Commission-approved tariff within PJM . . . , we find [that] the UTC trades at issue are under [FERC's] jurisdictional purview." (ECF No. 93-1 ¶ 145.) Furthermore, the "transactions and associated transmission service reservations affected the amount of transmission service available to other market participants to use [in] their transactions, including physical power sales." (ECF No. 93-1 ¶ 148.) As the *City Power* court explained, "[t]he entire process of transmission allocation in PJM is . . . subject to FERC's jurisdiction. And that brings [the] scheme within FERC's authority under the Anti-Manipulation Rule. The heart of the scheme, after all, was to reserve significant amounts of paid transmission in order to collect MLSA." 199 F. Supp. 3d at 239. Therefore, the Court finds that Powhatan's scheme was "in connection with

11

the purchase or sale of . . . transmission services subject to the jurisdiction of the Commission."
18 C.F.R. § 1c.2(a)

FERC plausibly and amply alleges that Powhatan's trades meet the elements of a
violation of the FERC Anti-Manipulation Rule.  Accordingly, FERC has sufficiently
demonstrated that Powhatan committed market manipulation in order to establish liability for
default judgment.

### C.      No Hearing Regarding Damages or Any Other Matter Is Necessary

Given the depth of the detail in the Penalty Order and the breadth of the accompanying
Administrative Record, no hearing regarding damages or any other matter is necessary. *See
Anderson*, 155 F.3d at 507 (noting that "in some circumstances a district court entering a default
judgment may award damages ascertainable from the pleadings without holding a hearing").
The Court has reviewed the pleadings and concludes that the pleadings well support the default
judgment and the cause of action contained therein.  The Court also finds that the damages
claimed are more than sufficiently supported by the pleadings.

### IV.  Conclusion

For the foregoing reasons, the Court GRANTS FERC's Motion for Default Judgment.
(ECF No. 321.)  The Court ENTERS default judgment against Powhatan.  FERC is AWARDED
damages in the amounts of $3,465,108 in disgorgement and $16,800,00 in civil penalties.

It is SO ORDERED.


Date: 03/22/23
Richmond, Virginia

_____ /s/
M. Hannah Lauck
United States District Judge